UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS SNYDER and MATTHEW
VALLELUNGA,

                    Plaintiffs,                          Case No. 15-cv-12238

v                                                        Honorable Thomas L. Ludington

CHRYSLER GROUP, LLC,

                    Defendant.
_____/

**OPINION AND ORDER CANCELLING ORAL ARGUMENT, GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING
PLAINTIFFS' COMPLAINT WITH PREJUDICE**

      Plaintiffs Thomas Snyder and Matthew Vallelunga initiated this action by filing their

complaint against Defendant FCA US LLC (misidentified as Chrysler Group LLC) on June 19,

2015.  Compl., ECF No. 1.  Plaintiffs allege that Defendant failed to hire them because of their

disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

("ADA"), and failed to hire them because of their heights in violation of Michigan's Elliot-

Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* ("ELCRA").  After the close of

discovery, Defendant filed a motion for summary judgment as to both claims.  *See* Mot. for

Summ. J., ECF No. 15.  Plaintiffs have not filed a response.  For the reasons stated below

Defendant's motion for summary judgment will be granted.

**I.**

      The facts set forth by Defendant in its motion for summary judgment have not been

disputed by Plaintiffs.  Defendant FCA is an employer in the state of Michigan that offers

competitive Production Team Member ("PTM") positions.  The process of applying for a PTM

job requires an applicant to first complete an online application process. *See* Vallelunga Dep. 34, ECF No. 15 Ex. 2.   FCA's talent acquisition team then contacts the applicants by e-mail to schedule a drug test and pre-hire assessment. *See Id.*; ECF No. 15 Ex. 6.   The e-mail describes physical tasks involved in the assessment and advises candidates to call an 866 number if they believe they will need an accommodation. ECF No. 15 Ex. 6.

### A.

In 2012, in response to its large applicant pool, Defendant FCA retained a company to develop a new pre-employment assessment system in order to enhance the identification and selection of high caliber candidates. *See* Meyer Decl., ECF No. 15 Ex. 1. The new selection system adopted by Defendant requires job applicants to pass a two-part test.   To be considered qualified for a PTM position an applicant must score above the 20th percentile in both portions of the test. *Id*. at ¶ 17.

First, applicants must pass the Automated Production Simulation component ("APS"), which requires applicants to perform automotive manufacturing tasks and processes. Specifically, applicants must perform inspecting, mounting, assembly, and bolting tasks. *Id*. at ¶ 4. The applicant's performance is automatically captured by a computer through sensors on the equipment, and the applicants score is based on item completion percentage rate of error in following specific procedures, using correct and not defective parts, adhering to safety, and gauge monitoring and reaction. *Id*. at ¶¶ 6-8. The test administrators have no role in evaluating, scoring, or influencing applicant scores on the APS portion. *Id*.

The second portion of the selection process is the Team Member Career Battery ("TMCB").   The TMCB is a computer-based, multi-format, multiple-choice test that evaluates

applicants in the categories of decision-making, managing self and getting along with others, and personal competence. *Id*. at ¶ 9. Applicants have one hour to complete the TMCB.

Prior to the pre-employment assessment, applicants are assembled in a pre-test meeting room and informed of the following:

> Today you will be going through a hands-on automated production exercise that will last about 4 hours and a computer test that will last about 1.5 hours. You will be carrying up to 25-lb. weights, walking 5 feet with them in hand, working for a prolonged period of time while bending in a confined space, and answering questions with a mouse on a computer. Is there anyone that feels that they need an accommodation to perform these tasks?

*Id*. at ¶ 21. If an applicant were to request an accommodation at the test site without having made advanced arrangements, the administrators could not immediately approve the accommodations because such requests first had to be evaluated by Defendant and its testing professionals to ensure that the accommodations were reasonable and would not affect the test's ability to measure essential PTM job skills. *Id*. at ¶¶ 21-24. The test administrators would therefore inform the applicant that he could either proceed as planned (without an opportunity for re-test), or he could forego the assessment for that day and instead call the 866 number to request the accommodation and reschedule the assessment. *Id*.

**i.**

Plaintiff Vallelunga, who has achondroplasia dwarfism, is four feet, four inches tall. Vallelunga applied for a PTM position with Defendant in April, 2014, and successfully completed the drug and telephone screen. *See* Vallelunga Dep. 1-2, 33-34. On July 15, 2014 Vallelunga received the standardized email informing him of the onsite assessment and of his ability to call the 866 number if he needed a reasonable accommodation. *Id*. at 34-38. Vallelunga claims that he called the 866 number on July 16, 2014 to request a stool, but was told by someone named Josh that a stool would not be required. *Id*. at 39.

Vallelunga reported for his pre-employment assessment on July 26, 2014. *Id.* at 41.  After the test administrator read the statement explaining the nature of the test, Vallelunga did not alert the administrator to his need for an accommodation immediately, but, after seeing the tasks he would need to perform, informed the administrator of his prior phone call and request for an accommodation. *Id.* at 42-43. The test administrator seemed unaware of his prior phone call, but told him that he could probably get a stool if he called the 866 number first. *Id.* at 51-53.  The administrator told him that someone would assist with his request and help him to reschedule the assessment. *Id.* Vallelunga then called the number and received a form to give to his doctor regarding the accommodation request. *Id.* at 50-54. Vallelunga's doctor completed the form, requesting a step stool for the bolting portion of the assessment.  *Id.*

Vallelunga's pre-employment assessment was rescheduled for August 28, 2014. *Id.* at 56-57.  On that date, Vallelunga selected a stool and completed the APS using a stool during the bolting portion of the assessment. *Id.* at 56-60. While Vallelunga passed the APS portion of the assessment, he scored in the lowest 20th percentile of candidates on the TMCB portion of the test.  Because he did not score above the 20th percentile in both portions of the test, Vallelunga was not referred for further hiring consideration. *See* Meyer Decl. ¶ 17.

**ii.**

Like Vallelunga, Plaintiff Snyder has achondroplasia dwarfism, and is four feet, three inches tall. *See* Snyder Dep. 13-15. After applying for a PTM position, in July of 2014 Snyder received the standardized email informing him of the onsite assessment and of his ability to call the 866 number if he needed a reasonable accommodation. *Id.* at 31-33. Snyder did not contact the 866 number in advance to request an accommodation. *Id.* at 33.

Snyder reported for his on-site assessment on July 9, 2014, and did not initially request an accommodation. *Id*. at 40-42.  However, after a practice session Snyder realized that he would need an accommodation, and allegedly informed a test administrator that he would need a stool or something to complete the APS portion of the assessment. *Id*. at 39-40.  The test administrator allegedly replied that she could not accommodate Snyder's request at the time. *Id*. at 41.  Snyder did not recall if the administrator informed him of his option to call the 866 number and reschedule the assessment for a date when he could be reasonably accommodated. *Id*. at 41, 44-45.  The administrator's business records suggest that Snyder was informed of his ability to reschedule with an accommodation, but that he elected to proceed without an accommodation. *See* Meyer Decl. ¶ 27; ECF No. 15 Ex. 10.

Snyder proceeded to complete both the APS and the TMCB test portions on July 9, 2014. *See* Snyder Dep. 42, 48-49. Because he did not score above the 20th percentile in either portions of the test, Snyder was not referred for further hiring consideration. *See* Meyer Decl. ¶ 29.

**B.**

After discovering that they had not been selected for employment, Vallelunga and Snyder each filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); Snyder on August 18, 2014 and Vallelunga on September 17, 2014.  *See* Compl. ¶¶ 7-8.  The EEOC issued dismissals and notices of rights to sue to Plaintiffs on April 28, 2015, which were received by Plaintiffs on or around May 1, 2015. *Id*. at ¶ 9.  Plaintiffs then initiated this case on June 19, 2015 by filing their complaint.  In an unopposed motion, Defendant now moves for summary judgment. *See* Mot. for Summ. J. Ex. 15.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c).

If an opposing party fails to properly address the factual assertions of the moving party, the court may "consider the facts undisputed for the purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). As explained by the Sixth Circuit:

> This burden to respond is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden—for example, by remaining silent—its opportunity is waived and its case wagered. Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record.

*Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). Because there are no material facts in dispute, summary judgment will be granted in favor of Defendant Chrysler as to Plaintiffs' ADA claims.

## A.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Thus, if an individual's disability renders him unable to perform an "essential function" of his job, he is not a "qualified individual" protected by the non-discrimination provision of section 12112.

Defendant now claims that Plaintiffs have not demonstrated a prima facie case of discrimination under the ADA. To establish a prima facie case under the ADA, a plaintiff must show that: "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). Defendant argues that Plaintiffs cannot establish that they are qualified to perform the essential functions of the PTM position because neither Plaintiff scored above the 20th percentile for the TMCB portion of the pre-hiring assessment.

To guide the determination of whether particular job functions are essential, the ADA establishes that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C.A. § 12111(8). In essence, a job function is essential "if its removal would 'fundamentally alter' the position." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (citation omitted).

The Sixth Circuit has established that the determination of whether a job function is essential should be based on "more than statements in a job description and should reflect the

- 7 -

actual functioning and circumstances of the particular enterprise involved." *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988). Factors to consider when determining whether a job function is essential include:

> (B) the employer's judgment; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs.

*Keith v. County of Oakland*, 703 F.3d 918, 925–26 (6th Cir. 2013) (citing 29 C.F.R. § 1630.2(n)(3)).

Even assuming Plaintiffs have demonstrated that they are able to perform the essential *physical* tasks of the PTM position with a reasonable accommodation, Plaintiffs have not established that they were "otherwise qualified" for the position because Plaintiffs did not pass the second portion of Defendant's standard pre-hire assessment. *Demyanovich,* 747 F.3d at 433. Defendant FCA has determined that decision-making, managing self and getting along with others, and personal competence are essential functions of the PTM position. Plaintiffs have not challenged this determination. Plaintiffs also have not challenged Defendant's claim that Plaintiffs failed the TMCB portion of the pre-hire assessment, nor have they rebutted Defendant's claim that neither Plaintiff requested a reasonable accommodation as to that portion of the test. Because Plaintiffs have not demonstrated a prima facie case of discrimination under the ADA, Defendant's motion for summary judgment will be granted as to that claim.

**B.**

Defendant also moves for summary judgment as to Plaintiffs' ELCRA claim. In its relevant part, ELCRA provides that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment,

compensation, or a term, condition, or privilege of employment, because of … height….”
M.C.L. § 37.2202(1)(a).

For claims of employment discrimination lacking direct evidence, the Michigan Supreme
Court has adopted a burden shifting test. *See Lytle v. Malady*, 579 N.W.2d 906, 914-15 (Mich.
1998). A plaintiff claiming employment discrimination has the initial burden of establishing a
prima facie case. *Id*. To do this, he must prove by a preponderance of the evidence that (1) he
was a member of the protected class; (2) he suffered an adverse employment action; (3) he was
qualified for the position; and (4) he was discharged under circumstances that give rise to an
inference of unlawful discrimination. *Id*. at 915-16.

As noted above, because Plaintiffs did not pass the TMCB portion of the pre-hire
assessment, Plaintiffs have not carried their burden of demonstrating that they were qualified for
the PTM position. Plaintiffs therefore have not made out a prima facie case of height
discrimination under ELCRA.

### III.

Accordingly, it is **ORDERED** that the hearing scheduled for July 7, 2016 is
**CANCELLED** because oral argument will not aid in the disposition of the motion. E.D. Mich.
L.R. 7.1(f)(2).

It is further **ORDERED** that Defendant FCA's motion for summary judgment, ECF No.
15, is **GRANTED**.

It is further **ORDERED** that Plaintiffs' Complaint, ECF No. 1, is **DISMISSED with
prejudice**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 10, 2016

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 10, 2016.

s/KIM GRIMES_____
Kim Grimes Acting in the Absence of
Michael A. Sian, Case Manager